# EXHIBIT B

**CV 15            1198**

FILED
CLERK

2015 MAR -9  AM 10: 27

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

TROY SIDDONS, TERRENCE PAYNE, PETER SPRAUVE, QUINCY PALMER, JOSEPH JOHNSON, CLARENCE WOODWARD JR., RAMEL ROBINSON, ELLIS WILSON, BERNABE LOPEZ, RASHAUN ROWE, JAMEL EDWARDS, ROBERT WOOTEN, TYSEAN SAIGO, ANTHONY MATTHEWS, REGINALD DUPREE, MICHAEL WILLIAMS, ADHM HAMMOURI, DESHAUN GREGORY AND ANDRE POUNALL,

Plaintiffs,

Docket No.:

MAUSKOPF, J.

POHORELSKY, M.J.

~~AFFIRMATION~~ of
~~IN SUPPORT~~ of
COMPLAINT
AND JURY
DEMAND

-against-

THE CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF CORRECTIONS, THE NEW YORK CITY DEPARTMENT OF CORRECTIONS, NEW YORK CITY DEPARTMENT OF CORRECTIONS COMMISSIONER JOSEPH PONTE, NEW YORK CITY DEPARTMENT OF CORRECTIONS ASSISTANT COMMISSIONER PATRICIA FEENEY, RIKERS ISLAND CORRECTIONAL FACILITY, ANNA M. KROSS CENTER ("AMKC"), AMKC MEDICAL CLINIC/FACILITY, WEST MEDICAL CLINIC/FACILITY, DOCTOR PARK OF AMKC MEDICAL CLINIC FACILITY, CAPTAIN JOGIE (SHIELD #817), DEPUTY DUNBAR, KITCHEN/PANTRY OFFICER MS. THOMAS, and "JOHN DOES" and "JANE DOES", names being fictitious intended to be individuals, officers, employees, agents, servants, licensees, doctors, nurses, medical clinic personnel, food administrators, food preparers, food providers, food suppliers, administrators and others of the New York City Department of Corrections, Rikers Island, Anna M. Kross Center, AMKC Medical Clinic/Facility and/or West Medical Clinic/Facility, in their individual and official capacities,

Defendants.

---------------------------------------------------------------------X

JOANN SQUILLACE, an attorney duly admitted to practice before the United States

District Court, Eastern District of New York, admitted to practice before the Courts of this

5

Defendants will of may suffer if this Honorable Court orders the within injunction to protect Plaintiffs.

3. Plaintiffs have no adequate remedy at law and are entitled to the relief requested herein. No prior application for the relief requested herein has been made.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

4. That on March 3, 2015 and to present, and at all relevant times herein mentioned, Plaintiffs are currently incarcerated and housed in/at/with the New York City Department of Corrections, Rikers Island, at/in the Anna M. Kross Center (AMKC) housing facility and, as such, Plaintiffs are in/under the exclusive custody and control of the Defendants including the New York City Department of Corrections. *Annexed hereto and made a part hereof as Exhibit "A", are the Affidavits of/by the Plaintiffs herein.*

5. That from on or about March 1, 2015 to on or about March 4, 2015, the housing area in/of AMKC in which Plaintiffs are housed was placed on lockdown by the Defendants and, as such, as inmates, Plaintiffs were prevented by the Defendants from engaging in certain activities and/or were prevented/restricted from certain activities that they are normally entitled to do/receive including assisting with the preparation and/or distribution of their meals. See Exhibit "A", *supra*.

6. That as a result of the lockdown of Plaintiffs' housing area/unit, one of the activities that were restricted was meal time, the manner and place in which Plaintiffs normally could receive/have their meals and/or assisting with the preparation and/or distribution of their meals. See id.

7. That on or about March 3, 2015, Plaintiffs received a meal consisting of, including, but not limited to, juice, vegetables/cabbage and meatloaf. See id.

7

foreign substance in their respective meals that, upon information and belief, as Plaintiffs were led to believe and/or were informed by agents of the New York City Department of Corrections, including but not limited to Defendants' medical personnel, that this foreign substance was rat poison and/or poison. See id.

13. That the Plaintiffs, upon learning of the foregoing, immediately requested that their respective blood and/or urine be tested to ascertain the nature and kind of this foreign substance that was in Plaintiffs' food, the effects of such foreign substance in Plaintiffs' blood/system and the necessary treatment for same. See id.

14. That despite the foregoing, Defendants intentionally, maliciously and with deliberate indifference and reckless disregard for Plaintiffs' lives, health, safety and well being, denied Plaintiffs such medical treatment/testing. See id.

15. That the Plaintiffs are in actual possession of the aforementioned meal and request that same be tested to ascertain the nature and kind of this foreign substance that was in their food, the effects of such foreign substance in their blood/system and the necessary treatment for same. See id.

16. That the Plaintiffs continue to suffer physical ailments including, but not limited to, nausea, vomiting, pain, dizziness, aches, headaches, stomach/intestinal pains, dehydration, diarrhea, nosebleeds, throwing up blood, diarrhea with blood and/or an overwhelming sense of illness and remain concerned about their health, safety and well being. See id.

17. That as inmates in the exclusive custody and control of the New York City Department of Corrections, Plaintiffs do not enjoy the liberty and freedom to take themselves to a doctor or hospital nor to consult with any outside medical personnel to

to preclude same from being tested so that the Plaintiffs will be precluded from testing and learning the true identity of the foreign substance in order to ascertain the nature and kind of this foreign substance that was in Plaintiffs' food, the effects of such foreign substance in their blood/system and the necessary medical treatment for same. See id.

21. That on March 3, 2015, upon information and belief, the Defendants, including Defendant Ms. Thomas as the kitchen/pantry officer for Plaintiffs' housing area at AMKC, are in the exclusive custody and control of Plaintiffs' food/meals prior to Defendant Ms. Thomas distributing same to the Plaintiffs, and, the Plaintiffs herein had no prior access, contact or control over the food/meals of March 3, 2015 prior to receiving same on March 3, 2015 from Defendants and, in particular, from Defendant Ms. Thomas.

22. That from on or about March 3, 2015 to present, the Defendants have been and continue to be intentionally and deliberately indifferent to the Plaintiffs' medical needs and have further failed to provide Plaintiffs with the necessary and required medical care. See id.

23. That, upon information and belief, the common medical conditions/ailments suffered by human consumption of rat poison are nausea, vomiting, pain, dizziness, aches, headaches, stomach/intestinal pains, dehydration, diarrhea, nosebleeds, throwing up blood, and/or diarrhea with blood and the lasting effects and consequences of same, upon information and belief, depend on the amount of consumption and the length of time same goes untreated. Further, upon information and belief, some brands/types of rat poison are blue/green/blueish-green in color.

24. That your affirmant has personally observed some of the preserved food/meal of

11

## THE LAW

27.     Indeed, it is well settled that deliberate indifference to a prisoner's serious medical needs and/or denial of access to medical care or interference with prescribed treatment is a violation of the Eighth Amendment of the United States Constitution. See Estelle v. Gamble, 429 US 97,104 (1976); Chance v. Armstrong, 143 F3d 698, 702 (2nd Cir. 1998); Alster v. Goord, et.al., 2010 US Dist. LEXIS 96793 (SDNY 2010); Ceparano v. Suffolk Co. Dep't of Health, et.al., 2010 US Dist LEXIS 73228 at 28 (EDNY 2010); Perez v. Hawk, 302 FSupp2d 9, 17 (EDNY 2004); Covington v. Westchester County Jail, et.al., 1998 US Dist LEXIS 626 (SDNY 1998).

28.     The standard of deliberate indifference includes both subjective and objective components. See Chance v. Armstrong, 143 F3d at 702. First, as in the within matter, the deprivation must be in objective terms, "sufficiently serious" –a standard which contemplates "a condition of urgency, one that may produce death, degeneration or exrteme pain." Chance v. Armstrong, 143 F3d at 702; Hathaway v. Coughlin, 37 F.3d 63,66 (2nd Cir. 1994); Salahuddin v. Goord, 467 F3d 263, 279 (2nd Cir. 2006). Moreover, an inmate need not show that he "experiences pain that is at the limit of human ability to bear [or] that [his] condition will degenerate into a life-threatening one." Brock v. Wright, 315 F3d 158, 163 (2nd Cir. 2003).

29.     Second, the defendant, as the Defendants did and continue to do in the within matter, must act with a "sufficiently culpable state of mind." Chance v. Armstrong, 143 F3d at 702. The prison, as the Defendants do in the within matter, must know of and disregard "an excessive risk to inmate health or safety" – that they are aware of facts from which the inference could be drawn that a substantial risk of serious harm exists. Farmer v. Bernnan,

proper and required medical treatment they urgently need in violation of the Eighth Amendment. As such, Defendants herein have acted with a "sufficiently culpable state of mind as they know of and have disregarded and continue to disregard the excessive risk to Plaintiffs' health or safety. Farmer v. Brennan, 511 US at 837.

32. Indeed, the Defendants' deliberate delay in providing Plaintiffs with the required and necessary medical care, testing and treatment is causing Plaintiffs to suffer "unnecessary and wanton infliction of pain" and, as such, Defendants' indifference to Plaintiffs' medical needs is a violation of Plaintiffs' Eighth Amendment rights. See Alster v. Goord, et.al, *supra* at 29 *citing* Hunt v. Dental Dep't, 865 F2d 198, 201 (9th Cir. 1989).

**WHEREFORE**, it is respectfully requested that an outside independent laboratory be permitted access and a visit with each of the inmates named herein to obtain, secure and test the aforementioned food/meal in said inmates' possession and that same independent laboratory agent be further permitted to take blood samples from each named inmate herein to test same at a costs to the Defendants and/or, in the alternative, to order the Defendants to immediately provide the necessary and proper medical treatment to the Plaintiffs named herein including, but not limited to, taking and testing Plaintiffs' respective blood and/or urine; to collect, secure and test the foregoing March 3, 2015 food/meal served to and consumed by Plaintiffs; to provide any and all proper, adequate, necessary medical care and treatment for Plaintiffs' serious medical conditions; to enjoin the Defendants from serving us any such contaminated food in the future and to compel the Defendants to take remedial/corrective measures to ensure that Plaintiffs' meals are not contaminated in the future. Plaintiffs further respectfully request that this Honorable Court grant Plaintiffs'